and Ethics in Washington, appellant to the United States Department of Justice. Ms. Weissman for the appellant, Mr. Dishonwood for the appellee. Mr. Dishonwood, for the appellant, Mr. Dishonwood, Mr. Dishonwood, Mr. Dishonwood, Mr. Dishonwood, Mr. Dishonwood, for the appellant, Mr. Dishonwood, Mr. Dishonwood, Mr. Dishonwood, Mr. Dishonwood, and must be made publicly available as final opinions made in the adjudication of cases, statements of policy, and interpretations adopted by the agency. Well, you asked for everything, right? And you were told you can't have everything. To be precise, what we asked for was all of the formal written opinions that are prepared under the best practices memo. And that memo describes that as a subset of opinions that erroneously, we submit, focused singularly on the word all, and said, because we were asking for all of those formal OLC opinions, and at least one or more were exempt, we got nothing. Okay, but the government's defending the decision on the ground that all includes – pardon me – that even your definition of all, all as you understood it and presented it, includes a good deal of some, at least some material that's privileged. Yes, and even if they're correct, Your Honor, that doesn't mean we're entitled to nothing. The FOIA case law makes it clear that an agency bears a burden of segregating out exempt from non-exempt material. Now, we're all familiar with the request for document procedures that you're referring to, right? And you'd expect a Vaughn index and all of that. Yes. But this is a different kettle of fish here, this reading room provision. Yes, it's different, and one of the most significant differences, Your Honor, is the fact that here, OLC's obligations are defined not by our request, not by our complaint, as the Court believed, but by the statute itself. This Court in Crew 1, the predecessor case to this one, made it clear – made a clear line of distinction between the reading room provision, 552A2, which it said imposed an affirmative obligation that didn't even require a request to be triggered, and the FOIA request provision you're talking about, 552A3, which is a reactive obligation. The agency doesn't have an obligation to do anything unless and until it receives a request, and then the scope of its obligations is defined by that request. But the reading room provision functions very differently. And we – So, Mr. Guzman, my question is why – I mean, the government says that the Office of Legal – well, it takes positions where there's some ambiguity about what their bottom line position is, but in their brief, they say they have no obligation under the reading room provision. They don't need to disclose anything. And I think the best – one way of understanding that is that the Office of Legal Counsel is embedded within the executive branch, and when it talks to other parts of the executive branch, it's really the government talking to itself. And unless and until an agency is taking action vis-à-vis the public, that isn't the kind of thing that's covered by the reading room provision. So what's your response to that? Isn't it really when the agency – when, you know, when the rubber hits the road, so to speak, and the agency is acting on advice? No, we don't believe that the definition of what falls within the scope of the reading room provision is that narrow. Now, I think a good example of that – and we cited in our reply brief, I believe, some examples of published OOC opinions. Now, they were incorporated as a statute, but one of those opinions had to do with – it was a directive to all agencies within the executive branch that they were not to follow a GAO memo that said that federal appropriations could not be used for video news releases. An example of the kind of opinion that is subject to the reading room provision, it doesn't necessarily impact the public, but it does provide a clear statement that's And I think the Schleffer case from this court is very instructive. It does acknowledge that the line between what's deliberative and what's affirmative or non-deliberative can be fuzzy. But the test then Judge Ginsburg said was, number one, does the opinion in question set a precedent for the case before it, and does it set a future precedent? And we submit the best evidence here that OLC creates opinions that comply – that fall within the reading room provision is the best practices memo. And that's what Interestingly, though, that memo is called best practices, which has a very prudential ring about it. You know, if we are operating, we OLC, if we are operating in, you know, the best traditions of, you know, public transparency and the like, we should do these things, not that any law so compels. But I would submit that the best practices memo goes well beyond that, Your Honor. The memo describes particular subsets of opinions that are produced under the practices outlined in that memo. For example, the best practices memo talks about the frequent question it faces, which is a concrete, ongoing legal dispute between two or more agencies. That is not a question of just offering legal advice on a policy decision, as the government would have you believe here. The OLC memo also talks about when the issue, when it concludes that a particular statutory provision is constitutionally invalid, its memo represents the views of the executive branch as a whole. In your example of the adjudication within the executive branch, I mean, if this were a private entity, you know, General Motors HR says, you know, labor law covers this, or discrimination law covers this, and General Motors, you know, operational division says, no, it doesn't, and they take it to the general counsel. In some sense, that's an adjudication, but it's internal, and nobody would question that that's subject to an attorney-client privilege, no? But here, I mean, the OLC functions in a variety of contexts. We readily admit that. We readily admit that there are times when all OLC is doing is offering legal advice, and the example of that I would cite is this Court's opinion in the Electronic Frontier Foundation case, because what the Court said there was, OLC was merely offering legal advice on a range of policy issues and decisions that the agency was facing. But that's not the only context in which OLC functions, and I began by talking about the unique role that OLC occupies, because I think that's critical in understanding the power that it's executing. In fact, you know, in early OLC opinion, described that power as quasi-judicial. Because it's not an Article III court, Your Honor, but they also described the power of the attorney general as not representing the government as a client, but acting in a judicial function, and we submit many of the OLC opinions are like the opinions of an Article III court. They're not advisory for that instance and also for future instances. So why, though, even consistent with everything you've just said, was the district judge in error in asking for more elaboration along the lines of what you're giving here? The district judge said, you've done a pretty broad-brush job here of asking for formal opinions. We know that at least one formal opinion in this case is the kind of product that would be subject to the reading room provision, and one way of reading his opinion is saying, just tell us a little bit more so that we can be comfortable that there really is anything in the set of things that would be covered by the reading room provision. What's wrong with his ruling? Because it places a burden of proof on us that the agency properly bore. Not burden of proof, burden of pleading, right? Well, no, we submit that we met our burden of pleading. But he said you didn't. He said you didn't. So we're at the pleading stage. Yes, yes, and I'm sorry if I was imprecise, but to be clear, what the court then directed us to do is the kind of thing that's not on the plaintiff to figure out what particular opinions fall within the various subparts of 552A2. Here, we met the minimum pleading burden. We alleged in our complaint that OSC is subject to the reading room provision. We alleged in our complaint that it creates a subset of documents referenced in the best practices memo, and that all of those documents have not been made publicly available. I think under the minimum pleading standards, we more than met them. And at that point, the burden shifted to the government, either to demonstrate that it had complied fully with the reading room provision, or that in some way it didn't apply to it. And that's not a burden that the government met here. What discovery would you envision in order to better inform crew of how to better nuance the requests for opinions that might be subject to disclosure under the reading room provision? I think there's several lines of inquiry, Your Honor, that we think are appropriate for very targeted discovery, modest discovery. I think one critical fact we need to know that's not in the record is how OLC opinions that it issues under the best practices memo are viewed, and whether or not they're followed by agencies. I mean, that's the kind of factor this court has in order to impact whether something is working on subject to disclosure. I think, you know, the case law is clear that in order... How would you do that? That sounds like a lot of, you referred to modest and targeted discovery. Would you go opinion by opinion? Would you... Well, no, I think... You want to ask OLC how other people view their opinions? We want to know if there are instances, for example, when agencies have not followed OLC opinions, have ignored or contradicted OLC opinions. Because it's our understanding as a general proposition that OLC establishes what the law means, and executive branch agencies follow that. In fact, as the best practices memo points out, when OLC gets a request for an opinion from an independent agency whose head doesn't serve at the pleasure of the president, OLC asks in advance and in writing for a commitment by that agency to conform its conduct to OLC's opinions. Then why do you need to know more about what the agency does when it gets the opinion? Well, that's what independent agencies are asked for. But we want to make sure, and the case law is clear, that one of the factors that determines whether opinions are actually followed. That sounds like a different lawsuit. It sounds like what you need to know is, are there opinions that are followed as binding, and what's the government's position on whether those are subject to the reading room provision? Yes, I would agree. I think at the end of the day, we're talking about pretty targeted discovery. But the only other thing I would point out is, if it's the government's position that a document or a particular subset of a document is privileged, this Court and the Supreme Court have made clear again and again that you need to understand the function that that document played in the administrative process that generated it. That was the whole analysis, I submit, that this Court went through in the Electronic Frontier Foundation case. It looked at the process and said, this is a policymaking process. OLC doesn't have the authority to make policy decisions. But then if you compare it to some of the cases that we've pointed to, where, for example, OLC opined on whether or not the Defense of Marriage Act precluded the Social Security Commissioner from giving benefits to a non-biological child of a civil union. Or cases the Supreme Court has passed on not involving OLC, but involving very legal advice like tax analysts or coastal states. And so depending on what the government's defense is, and it's not clear at all from the record, because they've made statements in their briefs here and before the District Court about how generally OLC opinion should be treated. But they haven't said categorically one thing or another. So is it your position that we, as a pleading matter, we and the District Court should take as true that the best practices memo describes circumstances on the ground, so to speak, and helps us understand what your complaint is asking for? Absolutely. And our complaint relies expressly and specifically on the best practices memo. All right. Thank you. Mr. Hinklewood. Good morning, Your Honors. May it please the Court, I'm John Hinklewood on behalf of the Department. I want to start right where the Court left off, which is focusing on the characteristics of the opinions that Cruz says it is seeking in this complaint, which are opinions that it views as controlling, precedential, and having prospective effect. The opinion in Electronic Frontier Foundation from this Court, the OLC opinion issued there, this Court described as being controlling in the sense that agencies usually follow advice that they receive, precedential, and governing the permissibility of certain tactics the FBI could use in the future, or should it choose to, although in fact, in that case, the FBI chose not to use those tactics. Given that what Cruz has requested here mirrors precisely the type of material this Court already found in Electronic Frontier Foundation, to be privileged and thus not subject to disclosure under the FOIA, the District Court quite properly concluded that a complaint seeking all such opinions that share those same characteristics is not plausibly pled under these circumstances. But, Mr. Hinklewood, the fact that Cruz may have sought more relief than it's entitled to doesn't make its claim defective. It's asking for a response from the government how and whether OLC is complying with its reading room requirements. Your Honor, at a minimum, we think Cruz needs to plead plausibly that the documents it is describing or seeking are subject to the requirements of A2 in the first instance, and it has not done that. Is it your position that no OLC opinions are subject to the reading room protocol? That is our general position, Your Honor. Well, this Court does not have to go that far to resolve this case. As the District Court properly recognized, a claim for all existing and future OLC opinions, and a sort of, frankly, quite extraordinary relief of perspective injunction, can be resolved simply by pointing to the fact that, you know, we know from Electronic Frontier Foundation that at least one such opinion bearing exactly the same characteristics as the opinions that Cruz is describing is, in fact, privileged and, for similar reasons, is also not, you know, a statement of policy or interpretation of law adopted by the agency. So there's no need to go as far as that, but certainly we think that's generally true. So the position that Mr. Bies or Bies took in the letter to Ms. Wiseman, that OLC opinions are ordinarily privileged and generally deliberative, is a less categorical position to the one that you're taking today, that there may, in fact, be some opinions that would be subject to the reading room provision, as I read that. Your Honor, I'm not aware of any opinions that we believe qualify with that provision, because obviously if there were such opinions, we would, I think, be cognizant of our obligation to disclose them. But, you know, the bottom line here is that Cruz still needs to plead something, some facts, to demonstrate that the documents they're seeking have, you know, some bearing on 552A2, and they simply have not done that, given the types of documents that they assert that, you know, are subject to the requirement. Well, they in the complaint at paragraph 2 ask for formal written opinions setting forth controlling legal interpretations, and they refer in paragraph 27 to opinions as described in the best practices memorandum. So they've sought to home in on the kinds of characteristics that the courts have deemed to be likely to place an opinion under the reading room provision FOIA. Yes, Your Honor, but those characteristics are exactly the same characteristics this Court addressed in Electronic Frontier Foundation. But the fact that one opinion given to one agency was shown to describe latitude for policy rather than a binding interpretation, surely it's not the government's position that every formal opinion from the Office of Legal Counsel is only describing legal guardrails that govern an otherwise a field of policy options. That's not the only characteristic. Well, Your Honor, what OLC does is it provides, you know, pre-decisional legal advice to other agencies when they are, you know, making policy and they consult OLC for guidance on questions of law. That's the authority that OLC exercises, you know, as Delegated Administrator General, is the ability to give advice on questions of law. So, yes, I mean, in that sense, the agency always needs to, you know, take that input and whatever other input and make its own policy judgment, and that's why in the Electronic Frontier Foundation the fact that an opinion was controlling or precedential or bore indicia of a binding legal decision didn't change the fact that ultimately it remained a privileged deliberative document. Well, if the decision is vendored in response to a commitment by an independent agency to be bound by it, then how can you say the same thing since it does? Well, Your Honor, even there, what the independent agency ultimately does is up to the independent agency in the sense that the question it might ask, you know, as in the FBI example, is, you know, we have a certain course of action we're considering. We're wondering if certain aspects of it have legal consequences one way or the other, and OLC may or may not bless certain courses of action. That doesn't change the fact that it's the agency that ultimately makes the decision and that the agency would be the one that would have any corresponding obligation to explain its action to the public. So we couldn't rely on that representation to you that the agency will be bound by your advice? Well, Your Honor, I just think it's not, again, it's not a relevant factor in considering whether or not these documents are covered by A2 or subject to the process privilege. The EFF, Electronic Frontier case, talks about secret law, whether the agency, whether OLC is making secret, making law which then remains secret. And says an agency is not permitted to develop a body of secret law, dot, dot, dot, hidden behind a veil of privilege because it is not designated as formal, binding, or final. Now, if that's true, then a fortiori, if it is designated as formal, binding, or final, it surely can't be hidden behind a veil of privilege. Well, Your Honor, I think it's, there's two different senses in which the term is being used there, because remember, Electronic Frontier Foundation goes on to say that the opinion, the OLC opinion issue in that case, despite being binding, in varying indicia of a binding legal decision, being precedential, being prospective in nature, being controlling in the sense that agencies follow it, did not make it working law. Since the agency had dropped the practice and didn't intend to resume it, it really wasn't binding, it was just simply running along the parallel line of the agency's own decision. Well, but the point, Your Honor, is that the agency then had a subsequent decision to make, and in fact made that decision. There's always some subsequent action that has to be taken by the relevant agency, and in fact, there's no indication there that that would be, you know, a statement of policy or intraprofessional law adopted by the agency. I think that, you know, that's sort of the flip side of this. Suppose an agency, as it does, asks you, can we pay, use appropriated funds to pay foreign doctors? And you say, no. Now, is there any doubt in your mind that that will be treated as binding by the executive agency in question? And even if it is, that doesn't change the fact that it's not subject to A2 or otherwise, you know, doesn't change the fact that it's a deliberative document, as we know from EFF. No, it's not deliberative. It's your final decision. Because, Your Honor, the relevant decision there is the agency then has to either pay or not pay those individuals, and the agency will then make a judgment to pay or not pay those individuals, and it may have obligations of its own to explain its action and to provide reasons, but those are separate from the statute or an appropriations writer. No funds here inappropriate may be expended for X or Y. Your office has, I think, on numerous occasions advised agencies that no subterfuge can get around that. No, you can't do it on your own time. You can't do it weekends, et cetera, et cetera, right? It's binding. That statute is binding. And you're telling them that statute is binding. And yet you think it's just advisory? Well, Your Honor, again, because OLC doesn't actually set the policy of any agency. Like, the fact that they seek legal advice doesn't change the fact that it's ultimately the agency who does or does not do the relevant action. But under Exemption 5, this Court in Tax Analysts v. IRS talks about field service advice memoranda issued by the IRS chief counsel. And those are not formally binding on IRS field personnel who request them, according to our opinion. They're held in high regard and generally followed. And we held that they would not be – could not be withheld under Exemption 5. And it seems like those – the question is, are there no opinions of OLC that have similar characteristics, even though they're by a lawyer in a position in some ways analogous to the general counsel in Tax Analysts and not necessarily automatically followed? Well, two points about that. Right. So two points about that. First of all, of course, the IRS, there's no question that it enjoys the authority to set its own policy. So sort of internal things that go on within the IRS, there's no doubt that, unlike Electronic Frontier Foundation, that unlike OLC opinions generally, there's no doubt that the IRS can set its own policy. And OLC does not enjoy similar authority. But, Your Honor – But it wasn't the policy decisions that were produced pursuant to the general counsel's advice in that case. It was the advice that was sought, the memoranda. Right. Because that adopted, in fact, the agency's particular policy. And that's why I say it's important here that an agency that receives advice from OLC may, you know, have policy choices to make, may have legal decisions that – you know, that legal information may play a role in the decisions it ultimately makes. But OLC ultimately does not actually set the policy. And that's why it's important that, you know, those receiving agencies may have their own obligations to convey information to the public. But that doesn't itself make it the advice that OLC gives in the first instance when the agency is in the process of formulating its policy or deciding what to do. That doesn't change the fact that that advice is privileged and, for the same reasons, also not subject to A2 in the first instance. And that's why I think it's important to focus more broadly on the claim that's that all existing and future OLC opinions that are controlling, precedential, and, you know, prospective must be disclosed when, in fact, we know that those characteristics – focusing on those particular characteristics isn't what's relevant to the analysis here. And we know that from Electronic Frontier Foundation. And, in fact, Frouk has pointed to no case in which an OLC advice document of this kind has ever been held to not have been privileged at the time it was created. Now, granted, at times the privileges may be waived. Agencies may adopt the reasoning as their own in rare circumstances. But Frouk has pointed to nothing indicating that a claim of this breadth is plausible in any way. I mean, I understand that you're in the position of defending the district court's opinion, but a lot of the reasoning that you're giving us is not in that opinion. It sounds to me like you are interpreting the statutory phrase, policy or and the statutory term, adjudication, and saying those are not activities of the OLC. But that's not the ground of the decision that you're defending. The ground is a pleading that hasn't been pleaded adequately to even put on the government any obligation to respond. And given that this is an affirmative obligation, a reading room obligation, for a set of opinions that they believe are sufficiently public regarding or, you know, affecting the public's right to be tantamount to policy and or interpretation, and for the court to just say, no, you haven't made your case, it does seem like there's a bit of a burden shift there, no? Well, at a minimum, a plaintiff has to plead something showing enough factual matter. I'm sorry. What about the pleadings in the Center for Accountability case? They've identified four subcategories of types of decisions that they say are more likely, in their view, to be subject to the reading room provision. Would that suffice? Well, obviously, Your Honor, we've opposed and we've moved to dismiss that case as well. But at a minimum, I think that illustrates why, you know, Crewe complains that it's not able to sort of even attempt to meet that sort of pleading standard. And, you know, obviously another plaintiff at least has attempted to do so. And the District Court gave Crewe the opportunity to do so here, and it declined. Instead, it persisted. I think the question is whether that's the right field of analysis. You know, you're sort of saying, like, we know how we do things. You, plaintiff, who haven't had an opportunity to learn how we do things internally, have to, you know, reach into the black box and figure out, is it an elephant or a parakeet in there before we will even respond and explain how we have or have either fulfilled our obligations or have no obligations. Well, two points, Your Honor. It's not too much to ask a plaintiff to plead sufficient factual matter to show that 552A2 applies in the first instance. And that's, in fact, Your Honor, it's the nature of a privilege that, you know, some information may not be available to a plaintiff. You don't generally get to say, I need discovery in order to plead a plausible claim. We usually do things, you know, the other way around in a pleading standard. Sure, we have. No pleading would suffice. Your Honor, it's not that necessarily there would never be any pleading that would ever suffice to get past a motion to dismiss. But, you know, certainly we don't think this plaintiff has sufficiently pledged something. And, you know, obviously, we've taken a similar position in some other cases. And what are the criteria by which the office gratuitously decides to publish them, I think? Well, Your Honor, I believe it. It's a matter of grace, of course. Yes, Your Honor. Joint Appendix pages 21 and 22, I think, outlines the process that the OLC goes through when considering. Best practices. Yes, Your Honor. When going through, you know, just generally to consider whether or not publication of an opinion is appropriate despite potentially applicable privileges. And one of the things that takes into consideration is obviously the effect on the deliberative process within the government from disclosure of such documents. So some things don't affect the deliberative process, apparently, because they're published. We are. It's not that they aren't deliberative documents when they're created. But any, you know, there's obviously a process for waiver. And it's certainly the case that the privilege can be waived just like any other privilege. And in those circumstances, you know, where it's appropriate, OLC considers publication. What about the opinions, the Defense of Marriage Act opinion precluding the non-biological child of a member of a Vermont civil union from qualifying for child's insurance benefits under the Social Security Act? I mean, in that opinion, the Social Security Administration seeks OLC's advice, agrees to be bound by it. Why doesn't that constitute working law within the meaning of the reading room provision? Because, Your Honor, there's still a subsequent step there where the Social Security Administration, having received the opinion, has to actually make the relevant decision. I'm going to issue benefits or not issue benefits. And at that point, whatever obligation Social Security may have to explain its action or to provide, you know, information to the claimant would apply to SSA, but wouldn't affect the privileged character of the legal advice it received before it made the relevant decision about issuing or not issuing benefits. Would the Social Security Administration have an obligation to post the OLC's opinion on its pursuant to the reading room obligation? Your Honor, no, not necessarily. Whatever obligations Social Security would have would obviously be determined by, you know, it could write its own opinion that lays out its reasons for not issuing those benefits, and it might have an obligation to disclose that. You know, there's any number of scenarios that might produce some sort of decision, but that wouldn't necessarily require the disclosure of the privileged advice it received. It would be a question of sort of how Social Security proceeded with providing the explanation that it gives. I suppose you were asking discovery. Is there any instance in which an independent agency, having given its agreement to be bound by your decision, would disregard it and act inconsistently with it? Would that be something you could answer? I mean, I don't know the answer to that question. Oh, you don't know the answer. Is it something you could answer? I would have to ask the office. I'm not certain if they, you know, keep a catalog or know of such instances. But, again, the bottom line is that... If you know of such one, is there any reason you couldn't answer that question? I mean, I suppose if we knew the answer, we could answer it. But, again, Your Honor, the... The example of Social Security is interesting. It suggests the possibility that the agency disregards your advice, goes ahead and does whatever. Let's say the advice would have... Your advice was favored in somebody's claim of entitlement, and the SSA denied it. So we've heard from OLC, but we think we're on solid ground. We're going to deny the claim. And then they're sued. Now, putting aside the question of whether the plaintiff could get access to your advice, it would be very illuminating if we knew about some instance like that. Well, Your Honor, I don't know what you mean, illuminating for what? Because, again... Whether it's the agency's decision ultimately or whether the agencies are truly bound by your advice. Well, Your Honor, that... Given a single example in which they just simply disregarded it would be helpful. Well, but, Your Honor, the reality is that, as we know from Electronic Frontier Foundation, whether or not something is controlling in that sense or binding in that sense isn't actually determinative. The question is whether, you know, the agency is making, you know, its own sort of relevant... Whether the agency is receiving that sort of pre-decisional legal advice and that's, you know, and then making its own policy decision. And now, you know, they may receive advice that only one course of action is sort of legally appropriate, but that doesn't change the fact that what they've sought is pre-decisional legal advice to make their own policy calls. What should we make of this passage that I read to you earlier in EFM, that a body of secret law cannot be shielded by a veil of privilege? Your Honor, I think that generally states the goals of the reading room provision. And all that's been asked of the plaintiff here is that they plausibly plead that the documents they're seeking are subject to the reading room provision. And the fact that they can't point to any characteristics of the opinions they're seeking that are distinct from the opinion issued in Electronic Frontier Foundation underscores why they haven't been able to meet that burden here and decline the opportunity to do so when the district court gave the leave to amend. But if I'm just going to make a few comments to go, it's that we don't make any secret law because we don't make any law. Your Honor, again, I think that as sort of a broad-brush statement is we do generally take the position that the documents that OLC creates are pre-decisional legal advice and not determinative of the policy of any agency. Those agencies make their own decisions after receiving OLC's advice to the extent they seek it. But, again, you don't necessarily have to contribute. So, I mean, doesn't this a little, at least in tension perhaps, in contradiction to things that both David Barron and Carl Thompson have said about the office when they led the office? Your Honor, I'm not sure which specific statements you're referring to, but the... About the authority of the agency within the executive branch. Your Honor, again, the fact that... Let's quote it in the blue brief. Sure, Your Honor. But, again, the fact that the agency, that OLC, you know, advice is, you know, controlling, as this Court said in the EFF, in the sense that agencies generally follow the advice they receive, is still undeterminative. And it still wouldn't change the fact that the complaint here, which seeks extraordinarily broad relief and extraordinarily, on the basis of extraordinarily broad allegations, which mirror precisely those at issue in Electronic Frontier Foundation. But, really, I mean, that really seems to me like a bit of a red herring, to the extent that you're saying no matter how specific you are, at the end of the day it's a null set. I mean, doesn't that seem a little odd that you would take that litigating position? What about for deliberative process? Doesn't that expire after 25 years? Under the FOIA, yes, we're not able to assert that after 25 years. So does OLC have an obligation to publish advice that it's given that's 25 or more years old? No, Your Honor. And, again, because we think for many of the same reasons that these documents are protected by deliberative process privilege, they're also not a true document. I mean, the fact is it's not a statement of policy or interpretation adopted by the agency because it's pre-decisional advice that's given to another agency about what to do. But isn't it adopted by the agency? Is the Department of Justice not an agency under that provision? But it's not. You know, again, sort of focusing on, you know, the same way that it's orders or adjudications that sort of affect the public, as you were pointing out earlier, the actions that actually affect the public are the actions of the agency that receives the advice. And so, you know, to the extent that someone wanted to, you know, file, for example, an A3 claim that asked for OLC documents of a certain age or attempted to, you know, disclose or asked OLC to, you know, review and disclose, OLC would certainly process a request of that nature, assuming it was reasonably, you know, defining the documents at issue and not unduly burdensome. You know, and that's part of what's, you know, important to remember here is that this claim is sort of proceeding in a very unusual way because we're under A2 instead of A3. You know, if a plaintiff brought an A3 claim, we wouldn't be having this same discussion. We're only talking about this pleading standard and whether they've sufficiently, you know, plausibly alleged that these documents are subject to A2 because crew has insisted on proceeding under A2 rather than filing a request under A3. In which case, your response would be what? Well, in which case, we would have obligations to, you know, assuming, again, that the request reasonably described the documents sought and wasn't unduly burdensome, met the sort of threshold requirements for an A3 request, we would have obligations to, you know, respond to the request in the way we respond to all other requests by asserting relevant privileges and... Well, given the breadth of the request, even as limited to final and binding and so on, I don't think you would be immediately responding with a Vaughn index. You know, I don't want to, I wouldn't want to speculate exactly how that would go, but, Your Honor, the point is that, you know, part of the reason we're having this sort of, I think, somewhat unusual conversation in the FOIA context is that we're under a provision that is itself somewhat unusual and that, you know, where the plaintiff at a minimum, we think, needs to demonstrate or provide some factual basis to believe that the documents it's seeking fall within 552A2. Why is it not your obligation as an agency presumptively covered by the FOIA to simply litigate the issue that you've been arguing today, which is we have no documents that fall within the definitions, adjudication, or policy or interpretation, and have a court pass on that question? Because, Your Honor, as a general matter, the question is going to be whether or not you have sufficiently pledged your complaint in the first instance, and until they have met that threshold burden, there's no obligation to respond in that particular way. It's curious to me that the government has not taken the position, yes, we have a written obligation, and we have a website, and we publish things there, and the index of the things that we've listed there is our index, and we're working hard on that, and we'll keep you posted. That's not the government's position. Well, I mean, Your Honor, OLC does have a page, a reading room page, on which it, you know, includes opinions that it has previously released publicly, but that's not because it believes those opinions are subject to A2 or because it believes, you know, dual due process privilege doesn't apply to those opinions when they're 25 or fewer years old. So, you know, the fact that it makes many of those opinions public doesn't change its underlying obligations. It just means that OLC goes above and beyond those obligations, you know, in disclosing information that has, frankly, no obligation to disclose in those instances. Any further questions? Does counsel have any time? All right. Why don't you take two minutes? Thank you. I want to start with the pleading standard. We very much dispute that we didn't meet what is, as this Court knows, a fairly low bar, pleading bar, in establishing a claim under the reading room provision. Our complaint expressly references the best practices memo. That memo sets out characteristics of opinions, of a subset of opinions, that OLC produces, that we submit, make those opinions subject to the reading room requirement, and that we submit is all that we were required to do. I'd also like to speak to the characterization of OLC's opinions as only providing legal advice that then require the agency to take another step. And I think the best example that refutes that is one we cited. OLC issued an opinion on the right of postal service employees to receive credit for retirement benefits purposes for periods of time in which the postal service had not made the required employer contributions. And the OLC opinion states, and I quote, OMB may not address the postal service's failure to make statutorily required contributions by denying its employees accrued service credit. May not. There is nothing advisory about that opinion. There is nothing in that opinion that suggests it's merely offering legal advice. It doesn't say that. It simply says OMB may not. And we think that demonstrates that there is a category of opinions, and that's the category we are seeking to have the agency produce under the reading room provision. And I also very much dispute counsel's characterization of the EFF decision as describing the entire universe, essentially, of opinions that OLC produces. In fact, I think what's noteworthy, and Judge Ginsburg, you talked about this in part, what's noteworthy about that opinion is the court goes out of its way to go through and recite a litany of cases dealing with working law and dealing with non-privileged documents, and it does so in a very approving fashion. And the common theme as described by the EFF court in those decisions, what makes them working law is the fact that they supply the reasons for the agency policy actually adopted, whereas in the decision in the OLC opinion before the EFF court, as you've noted, the FBI had abandoned the practice. It had no intent to pursue it in the future. It was examining policy options in the context of responding to an inspector general report. And I think that's very different than the context we've cited to both in published OLC opinions and the language that the best practices memo uses to describe those opinions. Why have you found it desirable to proceed under a reading room provision rather than demanding particular documents? I don't think it's a matter of desirable. I think that the reading room provision imposes, as this Court recognized in Crew 1, an affirmative obligation on the agency that is completely independent of any specific request by any specific individual or group. And we are simply seeking to have the OLC comply with that obligation. Had we, and I think it's telling, had we in fact filed a request under the A3, the request provision, for all OLC opinions that were produced pursuant to the best practices memo, OLC could not have responded because we were asking for all, and some were not, you know, were privileged that we get nothing. I mean, FOIA requesters frequently ask for all documents on a particular subject, and that's never been the basis for an agency to respond as an all-or-nothing prospect. It sounds like you're telling me that it would have been preferable to proceed under A3. I don't think it would have been preferable. I think we're trying to – More successful. Well, ironically, in this case, it might have, given the government's position here and given what the district court found, which was that by using the word all, we were, if we didn't get all, we got nothing. And that, we submit, was one of the fundamental errors that the district court committed. For all those reasons and the ones in our briefs, we respectfully ask this Court to reverse decision and remand to pull out. Thank you.
judges: Henderson, Pillard, Ginsburg